IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES T. GUIDRY,             )
                                       )
                Plaintiff,        )
                                       )
             v.                )      1:18CV111
                                       )
ANDREW SAUL,             )
Commissioner of Social Security,[1]    )
                                       )
               Defendant.    )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff James T. Guidry ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g), 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on March 13, 2014, alleging a disability onset date of June 1, 2008. (Tr. at 30, 188-96.)[2] His application was denied initially

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7]. Plaintiff later amended his onset date to May 12, 2010. (See Tr. at 30, 75.)

(Tr. at 109-27, 128-32) and upon reconsideration (Tr. at 118-27, 133-36.) Thereafter, Plaintiff

protectively filed a claim for SSI (Tr. at 30) and requested an administrative hearing de novo

on both his DIB and SSI claims before an Administrative Law Judge ("ALJ") (Tr. at 137-38).[3]

On November 9, 2016, Plaintiff, along with his non-attorney representative and an impartial

vocational expert ("VE"), attended the subsequent hearing. (Tr. at 69-108.) The ALJ

ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 27-

43), and, on December 19, 2017, the Appeals Council denied Plaintiff's request for review of

the decision, thereby making the ALJ's conclusion the Commissioner's final decision for

purposes of judicial review (Tr. at 1-6, 185-87).

II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of

social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the

scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144

(4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the

ALJ if they are supported by substantial evidence and were reached through application of the

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal

quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

---

[3] Plaintiff's application for SSI does not appear in the record.

(quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." <u>Hancock</u>, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on

_____

Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 32.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

osteoarthritis; degenerative disc disease; obesity; depression; [and] anxiety.

(Tr. at 33.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 33-35.) Therefore, the ALJ assessed

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

Plaintiff's RFC and determined that he could perform light work with further limitations. Specifically, the ALJ found that Plaintiff:

> can occasionally climb; he can frequently balance, stoop, kneel, crouch, and crawl; he can have frequent exposure to work place hazards such as unprotected heights and dangerous machinery; he is limited to simple, routine, and repetitive tasks with no fast paced production rate work; he is limited to a work environment with few, if any, workplace changes; he can have occasional interaction with the general public.

(Tr. at 35-36.) Under step four of the analysis, the ALJ determined that Plaintiff could not perform any of his past relevant work. (Tr. at 41.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the VE regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 42-43.)

Plaintiff now raises three challenges to the ALJ's decision. First, Plaintiff argues that "[t]he ALJ . . . did not explain how the medical evidence that she summarized translated [into] the specific functional impairments that she assessed in the [RFC]" and "fail[ed] to fully develop the record." (Pl.'s Br. [Doc. #10] at 15, 16.) Second, Plaintiff contends that "[t]he ALJ failed to properly account for all [Plaintiff's] mental limitations" in the RFC. (Id. at 16.) Third, Plaintiff asserts that the ALJ failed "to give specific reasons for the weight afforded to [Plaintiff's] symptom testimony." (Id. at 21.) After a careful review of the record, the Court agrees that Plaintiff's first contention warrants remand, and the Court therefore need not reach the remaining contentions.

A.    Explanation Supporting RFC

Plaintiff first contends that "the ALJ summarized the medical evidence but offered no explanation of the weight it was afforded . . . [and] did not explain how the medical evidence

that she summarized translated [into] the specific functional impairments that she assessed in the [RFC]." (Id. at 14-15.) Plaintiff further asserts that, because "[t]he ALJ acknowledged that the non-examining [state agency consultants] did not offer an opinion on [Plaintiff's] functioning because the record contained insufficient evidence at the time of their assessment[s]," and because "[t]here [we]re no other assessments of specific functional limitations" in the record, "the ALJ's [RFC] assessment was an impermissible substitution of her own judgment for that of a qualified medical professional." (Id. at 15 (citing Brown v. Commissioner of Soc. Sec. Admin., 873 F.3d 251, 271 (4th Cir. 2017).) Plaintiff notes that "[t]he ALJ has a duty to 'explore all relevant facts and inquire into the issues for adequate development of the record,'" and "should have developed the record and obtain[ed] an assessment of [Plaintiff's] functional limitations." (Id. at 16 (quoting Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).)

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55

F.3d 300, 307 (7th Cir. 1995). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

Here, the ALJ discussed the medical evidence relating to Plaintiff's physical and mental impairments (see Tr. at 36-41), and then provided the following rationale for the RFC:

> [T]he objective medical record does not support a finding that [Plaintiff] is disabled. Although [Plaintiff's] spine had decreased range of motion with tenderness and spasms, [Plaintiff] also consistently had a normal gait with normal sensations, reflexes, and motor strength. [Plaintiff] was also never found to have positive straight leg raising. Further, as stated above, [Plaintiff] reported having significant pain relief with medication and was never recommended to have invasive treatment for his physical impairments. Imaging of [Plaintiff's] joints also revealed rather mild findings. His musculoskeletal systems also usually had normal findings upon exam.
>
> . . . [A]lthough [Plaintiff] frequently had a depressed mood, once he was started on the proper medications he consistently reported having an improved and stable mood. [Plaintiff] also at times had a normal mood and affect and consistently had normal findings with his cognition, thought content, memory, judgment, and speech. [Plaintiff] was also consistently found to be alert and oriented and denied having suicidal ideation. Therefore, for the reasons explained in th[e] decision, the [ALJ] finds that [Plaintiff's] impairments are not as severe as alleged and cause [Plaintiff] no more limitations than those contained in the [RFC] finding.

(Tr. at 41.) However, as noted by Plaintiff, the ALJ did not explain how these findings translated into the RFC determination in this case. As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. SSR 96-8p, 1996 WL 374184, at *1. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, No. 12-1098, 826 F.3d 176, 187 (4th Cir. 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

Here, the medical record reflects that "X-rays of [Plaintiff's] neck show degenerative disc disease throughout the spine" and an MRI showed "multi-level spinal canal compromise." (Tr. at 345.) With respect to his cervical degenerative disc disease, examination reflected "decreasing sensation in both of his hands" with tricep weakness at 4/5. (Tr. at 344.) In addition, a bone scan reflected "arthritic process . . . most likely degenerative or osteoarthritis" in his joints, particularly in his shoulders, as well as some "mild generalized uptake" in his wrists and thumb. (Tr. at 449.) Later records also reflect tenderness and reduced range of motion in his shoulders and cervical spine, with pain of 8/10 with morphine. (Tr. at 537, 543.) Some of this evidence is included in the ALJ's summary of the record. (Tr. at 36-38.) In addition, as reflected in the ALJ's decision, Plaintiff testified that "his pain causes him problems lifting things, gripping things, and bending over." (Tr. at 36.) Specifically, Plaintiff testified that his "hands hurt really bad to be above [his] head" and that he couldn't hold things like he used to and "can't even hold a wrench." (Tr. at 80, 99.) He testified that his pain was in his shoulders, neck, the top of his back, and his fingers (Tr. at 83), and that it was hard to type on the computer (Tr. at 93.) However, the ALJ's decision did not include any limitation on handling, fingering, or reaching, and there is no discussion or analysis with respect to why such a limitation was not included.

Similarly, the medical record reflects that x-rays showed degenerative disc disease in his thoracic and lumbar spine and arthritis in his hip joints. (Tr. at 345, 449.) The medical record repeatedly reflects pain, limited range of motion, and muscle spasms in his thoracic and lumbar back. (Tr. at 361, 366, 385, 530, 537, 540, 543, 546.) The "diagnosis and associated orders" by his treating physician Dr. Vargas reflects:

> **Spinal stenosis of lumbar region at multiple levels**
> Symptomatic and limiting. Pt is unable to sit or stand for periods longer than 15 min. He been unable to engage in any gainful employment
> Pain meds help but unable to perform duties

(Tr. at 366.) In a later record, Dr. Vargas noted in the "assessment" and "plan" that Plaintiff suffered from:

> DDD (degenerative disc disease), thoracic
> Spinal stenosis of lumbar region at multiple levels
> DDD (degenerative disc disease), cervical
> Major depression, recurrent
> . . . .
> Due to both his significant spinal stenosis and pain of his lower back he remains unable to work and incapacitated. In addition his mental status prevents nonstrenuous work at this time.

(Tr. at 538.) As noted by the ALJ, Plaintiff testified that he has "problems with standing, sitting and walking due to pain." (Tr. at 36.) He testified that he has to ride a golf cart to go the 600 feet to his mailbox and 300 feet further to his garage. (Tr. at 92.) However, the ALJ did not include any limitation on Plaintiff's ability to stand or walk. His limitation to light work incorporates the ability to stand and walk 6 hours in an 8-hour workday, but the ALJ did not include any discussion or analysis with respect to Plaintiff's ability to stand and walk for 6 hours during a day, and did not discuss at all the opinion of Plaintiff's treating physician that Plaintiff could not sit or stand for longer than 15 minute periods.

Thus, as in the Fourth Circuit's decision in <u>Woods</u>, the ALJ failed to explain how he concluded, based on the evidence, that Plaintiff could perform light work with unlimited standing, walking, reaching, handling and fingering. See <u>Woods v. Berryhill</u>, 888 F.3d at 694. The ALJ thus failed to build an accurate and logical bridge from the evidence to the conclusions reflected in the RFC.

This failure is even more notable in the present case, because the state agency physicians all concluded that there was insufficient evidence to evaluate the claims, and therefore no function-by-function analysis was performed by the agency physicians. Indeed, it appears that no consultative examination was obtained by the state agency physicians because Plaintiff initially only applied for DIB under Title II, and would have been required to show that he became disabled prior to his date last insured, which was determined to be December 31, 2011. (Tr. at 109, 112.) The state agency physician on initial review found insufficient evidence to evaluate the claim, and noted that they would have needed testing of range of motion and breathing during the relevant period, prior to December 31, 2011. (Tr. at 113.) The state agency physician on reconsideration reached the same conclusion. (Tr. at 123, 133.) In addition, because the case was only evaluated as a Title II claim with a 2011 date last insured, no review was made of Plaintiff's medical records from 2012 forward. However, Plaintiff's date last insured was later determined to be 2014, and he also filed for SSI. The SSI claim and the DIB claim through 2014 were before the ALJ on review, but still no consultative evaluations were obtained. Thus, the case came to the ALJ with no consultative evaluations and no evaluation of the medical evidence by the state agency physicians.

An ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook, 783 F.2d at 1173. Development of the record may include ordering a consultative examination, and the regulations address the circumstances under which an ALJ may order such an examination as follows:

> [An ALJ] may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [a] claim. Some examples of when [an ALJ] might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> > (1) The additional evidence needed is not contained in the records of [the claimant's] medical sources;
> >
> > (2) The evidence that may have been available from [the claimant's] treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control, such as death or noncooperation of a medical source;
> >
> > (3) Highly technical or specialized medical evidence that [the ALJ] need[s] is not available from [the claimant's] treating or other medical sources; or
> >
> > (4) There is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established.

20 C.F.R. §§ 404.1519a(b), 416.919a(b) (emphasis added). The Fourth Circuit has held that remand is warranted for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980) (emphasis added).

Here, the record contained detailed testimony from Plaintiff regarding his physical and mental impairments and their impact on his ability to function; treatment records from orthopedists, a sleep specialist, Plaintiff's treating primary care physician, a rheumatologist, psychiatrists, and counselors; as well as an MRI of Plaintiff's thoracic spine, a whole-body bone scan, and x-rays of Plaintiff's cervical and lumbar spines, hands, and knees. (See Tr. at 72-100, 305-552.) However, none of that evidence was considered by the state agency physicians, nor was any subsequent medical review obtained. While there may be cases where an ALJ's determination is sufficiently supported and explained even without consultative evaluations and/or state agency review, here Plaintiff's treating physicians found significant limitations that were not addressed by the ALJ, and to the extent the ALJ did address the medical records, the ALJ essentially rejected the conclusions of Plaintiff's treating providers, without any other consultative evaluation or medical review and without providing sufficient analysis to explain how the evidence led to the RFC conclusions. In the circumstances, the Court concludes that remand is required, so that the ALJ can sufficiently develop the record and explain the basis for her conclusions.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #12] should be DENIED, and Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing [Doc. #9] should be GRANTED.

However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 27th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge